R. Kimball Mosier (2334)
George B. Hofmann (10005)
**PARSONS KINGHORN HARRIS**
A Professional Corporation
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378
E-mail: trustee@pkhlawyers.com

Attorneys for Gil A. Miller,
Chapter 11 Trustee

---

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>ENECO, INC.,<br><br>       Debtor. | Bankruptcy No. 08-20319 GEC<br>[Chapter 11] |
| GIL A. MILLER, Chapter 11 Trustee of<br>ENECO, INC.,<br><br>       Plaintiff,<br><br>      vs.<br><br>MAXIMILLIAN & CO., C. P. BAKER<br>SECURITIES, MAX LEWINSOHN, OTTO JAN<br>RINGDAL, DR. J. K. ZAGORSKA, TFI<br>PARTNERS, L.P., a Texas Limited<br>Partnership, SHANNON INDUSTRIES<br>LIMITED, HARRY REED, an individual,<br>SYDNEY REED, an individual,<br>MOUNTAINLAND BUILDERS PROFIT<br>SHARING TRUST, MORRIS HOLDING, LTD.,<br>GEORGE B. MOORE, MICHAEL MELICH,<br>CHARLES T. MAXWELL, PHILIP<br>LEWORTHY, MARTIN LEWORTHY, DOUG | Adversary Proceeding No. 08-02032<br><br>(Filed Electronically)<br><br><br>**AMENDED COMPLAINT** |

WORDSWORTH, MARTIN GYGI, RICHARD
FOWLER, AAGE FIGENSCHOU, IAN DODD,
CHRISTOPH DIETSCHE, NEVILLE DAVIS,
CIRALUS FINE ARTS CORPORATION,
DANIELE BURCKHARDT, EVA-MARIA
BUCHER, BOYD FINANCIAL
CORPORATION, MARIO BENBASSAT,
CHRISTOPHER BAKER, ANASAZI
PARTNERS III, LLC, and ANASAZI
PARTNERS III OFFSHORE LTD.,

Defendants.

Plaintiff, Gil A. Miller (Plaintiff), the duly appointed, qualified and acting trustee of

ENECO, Inc. (ENECO), hereby complains against Defendants Maximillian & Co., C. P.

Baker Securities, Max Lewinsohn, Otto Jan Ringdal, Dr. J. K. Zagorska, TFI Partners,

L.P., Shannon Industries Limited, Harry Reed, Sydney Reed, Mountainland Builders

Profit Sharing Trust, Morris Holding, Ltd., George B. Moore, Michael Melich, Charles T.

Maxwell, Philip Leworthy, Martin Leworthy,  Martin Gygi, Richard Fowler, Aage

Figenschou, Ian Dodd, Christoph Dietsche, Neville Davis, Ciralus Fine Arts Corporation,

Daniele Burckhardt, Eva-Maria Bucher, Boyd Financial Corporation, Mario Benbassat,

Christopher Baker, Anasazi Partners III, LLC, and Anasazi Partners III Offshore Ltd. and

alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter and parties to this

adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A)(H) and (0), 11

U.S.C. §§ 544, 548, and 550, Fed. R. Bankr. P. 7001 and DU Civ. R. 83-7.1(a).

2.      This is a core proceeding within the meaning of 28 U.S.C. § 1409.

## PARTIES

3.      Plaintiff, Gil A. Miller, is the duly appointed, qualified and acting trustee in

the above-referenced bankruptcy case of ENECO, a Utah corporation which is the

debtor in the above-referenced case.

4.      Defendant Maximillian & Co. is a company with a business address in the

United Kingdom, doing business in the State of Utah.

5.      Defendant C. P. Baker Securities is a company with a business address in

Massachusetts, doing business in the State of Utah.

6.      Defendant Max Lewinsohn is an individual residing in the United Kingdom,

doing business in the State of Utah.

7.      Defendant Otto Jan Ringdal is an individual residing in the Norway, doing

business in the State of Utah.

8.      Defendant Dr. J. K. Zagorska is an individual residing in the United

Kingdom, doing business in the State of Utah.

9.      Defendant TFI Partners L.P., a Texas Limited Partnership is a partnership

doing business in the State of Utah.

10.     Defendant Shannon Industries Limited is a partnership with a business address in New Zealand, doing business in the State of Utah.

11.     Defendant Harry Reed is an individual residing in Park City, Utah, doing business in the State of Utah.

12.     Defendant Sydney Reed is an individual residing in Park City, Utah, doing business in the State of Utah.

13.     Defendant Mountainland Builders Inc. Profit Sharing Trust, operated out of Park City, and is doing business in the State of Utah.

14.     Defendant Morris Holding Ltd., is a partnership with a mailing address in Portugal, doing business in the State of Utah.

15.     Defendant George B. Moore is an individual residing in Connecticut, doing business in the State of Utah.

16.     Defendant Michael Melich is an individual residing in Florida, doing business in the State of Utah.

17.     Defendant Charles T. Maxwell is an individual residing in New York, doing business in the State of Utah.

18.     Defendant Philip Leworthy is an individual residing in the United Kingdom, doing business in the State of Utah.

19.     Defendant Martin Leworthy is an individual residing in the United Kingdom, doing business in the State of Utah.

20.     Defendant Doug Wordsworth is an individual residing in the United Kingdom, doing business in the State of Utah.

21.     Defendant Martin Gygi is an individual residing in Switzerland, doing business in the State of Utah.

22.     Defendant Richard Fowler is an individual residing in the United Kingdom, doing business in the State of Utah.

23.     Defendant Aage Fingenschou is an individual residing in Norway, doing business in the State of Utah.

24.     Defendant Ian Dodd is an individual residing in the United Kingdom, doing business in the State of Utah.

25.     Defendant Christoph Dietsche is an individual residing in Switzerland, doing business in the State of Utah.

26.     Defendant Neville Davis is an individual residing in the United Kingdom, doing business in the State of Utah.

27.     Defendant Ciralus Fine Arts Corporation is a corporation with a business address in Switzerland, doing business in the State of Utah.

28.     Defendant Daniele Burckhardt is an individual residing in Switzerland, doing business in the State of Utah.

29.     Defendant Eva-Maria Bucher is an individual residing in Switzerland, doing business in the State of Utah.

30.     Defendant Boyd Financial Corporation is a corporation with a business address in New York, doing business in the State of Utah.

31.     Defendant Mario Benbassat is an individual residing in Switzerland, doing business in the State of Utah.

{00042902.DOC /}                              5

32.     Defendant Christopher Baker is an individual residing in Massachusetts, doing business in the State of Utah.

33.     Defendant Anasazi Partners III LLC, is a partnership with a business address in Massachusetts, doing business in the State of Utah.

34.     Defendant Anasazi Partners III Offshore LTD is a partnership with a business address in Massachusetts, doing business in the State of Utah.

## STATEMENT OF RELEVANT FACTS

35.     ENECO is a Utah corporation which is performing research and development for the commercialization of energy technologies.

36.     As part of its business operations, ENECO owns or has rights in numerous foreign and domestic patents covering various types of energy technologies (collectively referred to as the Patents).

37.     In or about the last quarter of 2002, ENECO began to solicit financing from various individuals and entities to be used in connection with ENECO's business operations.

38.     As a result of those solicitations, on January 15, 2003, ENECO, as borrower, and defendants Shannon Industries Ltd and Ciralus Fine Arts Corp. (the 2003 Note Holders), as lenders, entered into the following documents:

      a.     Secured Loan Agreement (the 2003 Loan Agreement),

      b.     12% Secured Convertible Promissory Note (the 2003 Note),

      c.     An Intercreditor Agreement, and

      d.     A Collateral Patent Assignment.

39.     Under the Collateral Patent Assignment, the 2003 Note Holders were granted a security interest in the Patents owned by ENECO, with C.P. Baker Securities, Inc. (CPBS) as the "Collateral Agent" to hold the Patents for the benefit of the 2003 Note Holders.

40.     On or about July 14, 2003, the Collateral Patent Assignment was recorded with the United States Patent and Trademark Office.

41.     In or about the first quarter of 2005, ENECO began to solicit additional financing from various individuals and entities to be used in connection with ENECO's business operations

42.     As a result of these solicitations, during 2005, ENECO, as borrower, and defendants, all of which constitute the payees of 12% Secured Convertible Promissory Notes issued in 2005 (the 2005 Note Holders), as lenders, entered into the following documents:

      a.     Secured Loan Agreement (the 2005 Loan Agreement),

      b.     12% Series A Secured Convertible Promissory Note,

      c.     12% Series B Secured Convertible Promissory Note (the Series A and B Secured Convertible Promissory Notes are collectively referred to herein as the 2005 Notes), and

      d.     An Intercreditor Agreement.

43.     In connection with the foregoing, ENECO and Christopher P. Baker, as

collateral agent acting for the 2005 Note Holders, entered in a Security Agreement

(2005 Security Agreement).

44.     The 2005 Security Agreement specifically stated:

> The Company desires to grant a security interest to the Collateral
> Agent in the Company's reversionary rights in and to the Patents in
> order to secure complete and timely repayment of the Secured
> Obligations.  **Prior to the reversion or re-assignment of the
> Patents to the Company or termination of the 2003 Collateral
> Assignment or related Secured Loan Agreement, the Collateral
> Agent shall not have a present interest in the Patents.**
> (emphasis added)

45.     Pursuant to Section 1.1.1 of the 2005 Security Agreement, ENECO

granted a security interest in

> (a) all of the Company's reversionary rights in and rights to
> reassignment of all of the Company's patents including, without
> limitation, the Patents listed on <u>Exhibit A</u> attached hereto; and (b)
> **upon the reversion or re-assignment of the Patents to the
> Company, (i) all products and proceeds of the Patents,
> including, without limitation, all income, royalties, damages
> and payments now and  hereafter due and/or payable under
> and with respect to the Patents and (ii) the right to sue and
> recover for past, present or future infringement of any of the
> Patents.**  (emphasis added)

46.     The property described in Section 1.1.1 of the 2005 Security Agreement is

hereinafter referred to as the "Collateral."

47.     Section 1.2 of the 2005 Security Agreement also provided:

> 1.2     <u>Perfection of Collateral</u>.  The Company will execute and
> deliver, and file and record in the proper filing and recording places
> (including, without limitation, filing with the U.S. Patent and
> Trademark Office) all such instruments, including, without limitation,
> Uniform Commercial Code financial statements, and will take all

such other action, as the Collateral Agent deems reasonably necessary for perfecting or otherwise confirming to it the security interest granted by the Company to the Collateral Agent both before **and after reversion or re-assignment of the Patents**. (emphasis added)

48.     Section 6 of the 2005 Security Agreement further stated:

6.      <u>New Patents</u>.  If, before the Secured Obligations are fully satisfied, the Company obtains rights with respect to any additional patent applications or patents or to any reissue, division, continuation, renewal, extension, or continuation-in-part of the Patents or any improvement on the Patents, **the provisions of Section 1 above shall automatically apply thereto and the Company shall give to Collateral Agent written notice thereof**. The Company hereby authorizes Collateral Agent to modify this Agreement by amending <u>Exhibit A</u> to include such rights and shall take such steps as Collateral Agent may request to record **such assignment** with the appropriate issuing office.  (emphasis added)

49.     Section 7 of the 2005 Security Agreement further stated:

7.      <u>Term/Termination</u>.  **The term of the assignments granted herein** shall extend until the earlier of (a) the expiration of the last to expire of the Patents or (b) payment in full of the Secured Obligations and termination of this Agreement.  This Agreement shall terminate upon full satisfaction of the Secured Obligations. (emphasis added)

50.     Section 8 of the 2005 Security Agreement further stated:

8.      <u>Collateral Agent's Rights Prior to Reversion or Re-assignment</u>.  Notwithstanding anything to the contrary contained herein, **Collateral Agent on behalf of himself and the holders of the Notes, acknowledge and agree that Collateral Agent is not, as of the Effective Date, receiving a present interest in the Patents and may not enforce its rights under this agreement until the reversion or re-assignment of the Patents to the Company or the termination of (sic) the Security Loan Agreement or the 2003 Collateral Assignment.  Upon the reversion or re-assignment of the Patents, the Collateral Agent shall have all of the right in and to the Patents as set forth in Section 1 of this Agreement.**  To the extent that the Collateral

Agent's rights in and to the Patents or this Agreement are deemed inconsistent with the Company's obligations under the 2003 Collateral Assignment, this Agreement shall be void.  (emphasis added)

51.      To Plaintiff's knowledge, no instrument relating to the 2005 Security Agreement has been filed with the United States Patent and Trademark Office.

52.      To Plaintiff's knowledge, no termination statement or other instrument terminating the Collateral Patent Assignment filed on or about July 14, 2003 has been executed, filed or recorded with the United States Patent and Trademark Office.

53.      In or about December, 2007, Shannon Industries Ltd and Ciralus Fine Arts Corp. released their security interest in the Patents.

54.      The total principal amount of the 2005 Notes was approximately $3,460.000.00.

55.      The 2005 Notes granted the 2005 Note Holders the right to convert the debt owed to them under the 2005 Notes to an equity ownership in ENECO in the form of common stock issued by ENECO.  Section 5.2 of the 2005 Notes specifically provides that prior to the maturity date of the 2005 Notes, each 2005 Note Holder could convert its 2005 Notes to one share of common stock for every $1.00 in principal and accrued interest that is converted.

56.      The Intercreditor Agreement governing the 2005 Notes appointed Chris P. Baker (Baker) as the "Collateral Agent" and granted the Collateral Agent certain rights with respect to the Patents.

57.      The Intercreditor Agreement also provides that:

> [t]he Collateral Agent may be removed at any time by such Lenders
> as hold at least a majority or more of the Indebtedness after receipt
> from such Lenders of at least 30 days' prior written notice by the
> current Collateral Agent which includes evidence of the agreement
> of such Lenders to the removal and the calculation of the majority
> of the Indebtedness.

58.   On or about September 22, 2006, Max Lewinsohn, at that time a director

of ENECO, informed the 2005 Note Holders in a letter that ENECO anticipated

obtaining additional funding of about $5,000,000.00.  Lewinsohn further informed the

2005 Note Holders that prior to the maturity of the 2005 Notes, they had the right to

convert their 2005 Notes into ENECO common stock at $1.00 per share for $1.00 of

principal and accrued interest owed to them.

59.   Defendants informed Lewinsohn that they desired, as allowed under

Section 5.2 of their respective 2005 Notes, to convert the entire principal and accrued

interest owed on their respective 2005 Notes in exchange for ENECO common stock,

with some requesting portions to be paid in cash.

60.   Lewinsohn further informed the 2005 Note Holders that upon obtaining the

funding, the investor would receive ENECO common stock at a rate of $5.85 per share.

61.   On December 21, 2006, Lewinsohn sent a letter to the 2005 Note Holders

who had elected to convert their respective notes to ENECO common stock stating that

ENECO had received a firm commitment from Catalyst Investment Group Limited

(Catalyst) to provide ENECO funding of more that $5,000,000.00.  Lewinsohn further

informed the electing 2005 Note Holders that their respective 2005 Notes would be

converted to ENECO common stock as of the maturity date of December 31, 2006.

62.     On or about December 31, 2006, ENECO issued common stock, under

Section 5.2, to each of the 2005 Note Holders who had elected to convert the amounts

owing under their 2005 Notes to ENECO common stock.  The common stock was

issued at the rate of one share of common stock for every $1.00 of principal and

accrued interest converted.

63.     Section 5.2 of the 2005 Notes provides that, upon the 2005 Note Holders'

election to convert to common stock, the 2005 Notes now converted are cancelled and

the 2005 Notes must be surrendered to ENECO.

64.     During July 2007, new members of ENECO's board of directors (the

ENECO Board) were elected by the shareholders of ENECO.

65.     As of September 2007, ENECO had not received the full $5,000,000.00 in

additional funding.

66.     During August 2007, and notwithstanding the conversion of 2005 Notes

into ENECO common stock, Lewinsohn (while still a director of ENECO), obtained from

certain ENECO shareholders (i.e., prior 2005 Note Holders who had previously

converted their 2005 Notes to ENECO common stock) written statements purporting to

appoint Maximillian & Co. (Maximllian) as the "Collateral Agent" of the then cancelled

2005 Notes.  Lewinsohn is the principal of Maximillian and he has asserted that the

purported appointments equaled approximately 60% of the total outstanding debt of the

2005 Notes.

67.     During September 2007, realizing that the expected significant gain of

being a shareholder (because of the expected funding by Catalyst) may not occur, and

after obtaining the purported appointment of Maximillian as the Collateral Agent,

Lewinsohn, as a director of ENECO, encouraged the ENECO Board to rescind the

conversion of the 2005 Notes to ENECO common stock.

68.    On September 26, 2007, the ENECO Board, which included Lewinsohn,

held a meeting at which a motion was made and passed to reinstate the 2005 Notes

that were converted to common stock in December 2006.

69.    Defendants did not provide any consideration to ENECO in exchange for

the purported reinstatement of the 2005 notes.

70.    On October 3, 2007, Maximillian, through its principal Lewinsohn, sent a

notice to CPBS and Baker, claiming that the Collateral Agent for the 2005 Notes had

been changed to Maximillian.

71.    On October 29, 2007, ENECO sent a letter to the prior 2005 Note Holders

which stated in pertinent part as follows:

> I am pleased to inform you that your Note(s) which had been
> previously been [sic] converted to ENECO, Inc. common stock **has
> been reinstated and continues in force as though the stock
> conversion had never occurred**. . .
>
> The share certificate issued to you on conversion of your Note(s)
> has been cancelled and should be returned to the Company.
> (emphasis added)

(The reinstatement of Defendants' as 2005 Note Holders shall hereafter be referred to

as the Reinstated 2005 Notes).

72.     On November, 7, 2007, Maximillian, in its capacity as the purported

Collateral Agent, through its principal Lewinsohn, sent a notice to ENECO that it was in

default of the Reinstated 2005 Notes.

73.     On November 28, 2007, Lewinsohn resigned as a director of ENECO.

74.     On December 21, 2007, Maximillian, in its capacity as the purported

Collateral Agent, through its principal Lewinsohn, sent a notice to ENECO of a public

sale that was going to be conducted with respect to the Patents on January 4, 2008, at

9:00 a.m.

75.     On January 2, 2007, the ENECO Board convened a meeting at which all

of the directors were present and a motion was made and passed which annulled the

September 26, 2007 decision by the prior ENECO Board to allow the converted 2005

Note Holders to reinstate their 2005 Notes.

76.     On January 18, 2007, ENECO filed a voluntary petition under Chapter 11

of Title 11 of the United States Code in the United States Bankruptcy Court for the

District of Utah.

## **FIRST CAUSE OF ACTION**

(Declaration that the 2005 Notes are Equity Contributions Not Debt)

77.     Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

78.    At the time the 2005 Notes were issued, ENECO had inadequate capitalization.

79.    At the time the 2005 Notes were issued, ENECO's 2004 audited financial statement issued January 13, 2005, reflected total revenues from June 3, 1991 through December 31, 2004, were only $908,673.00, or approximately $65,000.00 per year.

80.    At the time the 2005 Notes were issued, ENECO had no ability to obtain loans from outside lending institutions.

81.    At the time the 2005 Notes were issued, based on ENECO's prior business history and its existing business model, ENECO had no ability to repay the 2005 Notes per the terms of the Agreement.

82.    Most of the 2005 Note Holders are shareholders of ENECO.

83.    The issuance of the 2005 Notes enabled the 2005 Note Holders to obtain priority over regular ENECO creditors.

84.    Subsequent to the issuance of the 2005 Notes, management of ENECO was controlled by the 2005 Note Holders.

85.    ENECO failed to repay the 2005 Notes when due and repayment was postponed.

86.    The 2005 Notes gave the 2005 Note Holders the option to convert their loans to equity on favorable terms that would allow 2005 Note Holders to obtain a windfall.

87.    ENECO and the 2005 Note Holders intended the 2005 Notes to be equity if the 2005 Note Holders determined it to be in their interest.

88.     The Defendants purported to act simultaneously as ENECO creditors and as ENECO shareholders.

89.     The Defendants changed their status between creditor and shareholder based on what was perceived as most favorable to them.

90.     Based on the foregoing and other factors, the 2005 Notes were not true debt, but were camouflaged equity.

91.     Plaintiff  is entitled to a declaratory judgment that (a) the Defendants' financial contributions evidenced by the 2005 Notes are equity contributions, not debt, and (b) because the Defendants' financial contributions are equity contributions, any purported security interest in the Collateral in favor of Defendants, is null and void.

### SECOND CAUSE OF ACTION

(Avoidance and Recovery of Unperfected Liens Pursuant to
Bankruptcy Code §§ 544 and 550)

92.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

93.     Pleading in the alternative, the 2005 Security Agreement was in fact and in effect an assignment of ENECO's patents or an assignment of an interest in ENECO's patents.

94.     Pursuant to 35 U.S.C. § 261:

Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. …

An assignment, grant or conveyance shall be void as against any
subsequent purchaser or mortgagee for a valuable consideration, without
notice, unless it is recorded in the Patent and Trademark Office within
three months from its date or prior to the date of such subsequent
purchase or mortgage.

95.     Plaintiff is informed and believes, and therefore alleges that the 2005

Security Agreement has never been recorded in the Patent and Trademark office.

96.     Section 544 of the United States Bankruptcy Code provides:

(a) The trustee shall have, as of the commencement of the case, and
without regard to any knowledge of the trustee or any creditor, the rights
and powers of, or may avoid any transfer of property of the debtor or any
obligation incurred by the debtor that is voidable by—

(1)  a creditor that extends credit to the debtor at the time of the
commencement of the case, and that obtains, at such  time and
with respect to such credit, a judicial lien on all property on which a
creditor on a simple contract could have obtained such a judicial
lien, whether or not such a creditor exists;

(2)  a creditor that extends credit to the debtor at the time of the
commencement of the case, and obtains, at such time and with
respect to such credit, an execution against the debtor that is
returned unsatisfied at such time, whether or not such a creditor
exists.

97.     Because the 2005 Security Agreement has never been recorded with the

United States Patent and Trademark Office, it is void as to Plaintiff by virtue of 11

U.S.C. § 544 and, pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the

property transferred pursuant to the 2005 Security Agreement or the value of that

property from the Defendants.

## THIRD CAUSE OF ACTION

(Avoidance and Recovery of Unperfected Liens Pursuant to
Bankruptcy Code §§ 544 and 550)

98.     Plaintiff incorporates herein by reference all preceding paragraphs in this

Complaint.

99.     Pleading in the alternative, Utah Code Ann. § 70A-9a-203 provides:

(1)     A security interest attaches to collateral when it becomes
enforceable against the debtor with respect to the collateral, unless an
agreement expressly postpones the time of attachment.

(2)     Except as otherwise provided in Subsection (3) through (9),
a security interest is enforceable against the debtor and third parties with
respect to the collateral only if:

(a) value has been given;

(b) the debtor has rights in the collateral or the power to
transfer rights in the collateral to a secured party; and

(c) one of the following conditions is met:

(i) the debtor has authenticated a security agreement
that provides a description of the collateral and, if the
security interest covers timber to be cut, a description of the
land concerned;

(ii) the collateral is not a certificated security and is in
the possession of the secured party under Section 70A-9a-
313 pursuant to the debtor's security agreement;

(iii) the collateral is a certificated security in registered
form and the security certificate has been delivered to the
secured party under Section 70A-8-301 pursuant to the
debtor's security agreement; or

(iv) the collateral is deposit accounts, electronic
chattel paper, investment property, or letter-of-credit rights,

> and the secured party has control under Section 70A-9a-
> 104, 70A-9a-105, 70A-9a-106, or 70A-9a-107 pursuant to
> the debtor's security agreement.

100.    Pursuant to the terms of the Security Agreement, Defendants had no

interest in the Patents as of the date of the Security Agreement and receive no interest

in the Patents until reversion or reassignment of the Patents to ENECO or the

termination of the Secured Loan Agreement or the 2003 Collateral Assignment.

101.    Defendants' secured interest is unperfected because the security interest

has not attached to the Collateral because attachment was expressly postponed by the

terms of the 2005 Security Agreement.

102.    Defendants' secured interest is unperfected because the security interest

was not enforceable against ENECO because ENECO had no power to transfer rights

in the Collateral.

103.    Section 544 of the United States Bankruptcy Code provides:

(a) The trustee shall have, as of the commencement of the case, and
without regard to any knowledge of the trustee or any creditor, the rights
and powers of, or may avoid any transfer of property of the debtor or any
obligation incurred by the debtor that is voidable by—

> (1)  a creditor that extends credit to the debtor at the time of the
> commencement of the case, and that obtains, at such  time and
> with respect to such credit, a judicial lien on all property on which a
> creditor on a simple contract could have obtained such a judicial
> lien, whether or not such a creditor exists;

> (2)  a creditor that extends credit to the debtor at the time of the
> commencement of the case, and obtains, at such time and with
> respect to such credit, an execution against the debtor that is
> returned unsatisfied at such time, whether or not such a creditor
> exists.

104.   The 2005 Security Agreement is void as to Plaintiff by virtue of 11 U.S.C. § 544 and, pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover the property transferred pursuant to the 2005 Security Agreement or the value of the property from the Defendants.

## FOURTH CAUSE OF ACTION

(Avoidance and Recovery of Preference Pursuant to
Bankruptcy Code §§ 547 and 550)

105.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

106.   Pleading in the alternative, Defendants' security interest became enforceable against the Debtor with respect to the Collateral and attached to the Collateral only after the reversion or re-assignment of the patents to ENECO or the termination of the 2003 Loan Agreement or the 2003 Collateral Assignment.

107.   The attachment of the Defendants' security interest to the Collateral is hereinafter referred to as the "Subject Transfer."

108.   The Subject Transfer constitutes a transfer of an interest of the Debtor in property.

109.   The Subject Transfer to Defendants was made within 90 days prior to the date the Debtor filed bankruptcy.

110.   The Subject Transfer was to or for the benefit of a creditor.

111.   The Subject Transfer was for or on account of an antecedent debt owed

by the Debtor before such transfer was made.

112.   The Subject Transfer was made while the Debtor was insolvent.

113.   The Subject Transfer enabled the Defendants to receive more than they

would receive if the case were a case under Chapter 7 of this Title.

114.   By reason of the foregoing, the Plaintiff may avoid the Subject Transfer as

a preference under 11 U.S.C. § 547 and, pursuant to 11 U.S.C. § 550, Plaintiff is entitled

to recover the property transferred or the value of the property from the Defendants.


## <u>FIFTH CAUSE OF ACTION</u>

(Avoidance and Recovery of Preference Pursuant to
Bankruptcy Code §§ 547 and 550)


115.   Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

116.   Pleading in the alternative, Defendants are insiders of the Debtor as

defined by 11 U.S.C. § 101(31).

117.   The Subject Transfer to Defendants was made within one year prior to the

date the Debtor filed bankruptcy.

118.   The Subject Transfer was to or for the benefit of a creditor.

119.   The Subject Transfer was for or on account of an antecedent debt owed

by the Debtor before such transfer was made.

120.   The Subject Transfer was made while the Debtor was insolvent.

121.    The Subject Transfer enabled the Defendants to receive more than they would receive if the case were a case under Chapter 7 of this Title.

122.    By reason of the foregoing, the Plaintiff may avoid the Subject Transfer as a preference under 11 U.S.C. § 547 and, pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover the property transferred or the value of the property from the Defendants.

## SIXTH CAUSE OF ACTION

(Avoidance and Recovery of Fraudulent Transfers—
Bankruptcy Code § 544 and Utah Code Ann. § 25-6-6(2))

123.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

124.    Defendants are "Insiders" of ENECO as defined by Utah Code Ann § 25-6-2(7).

125.    The Subject Transfer was allegedly made on account of an antecedent debt.

126.    ENECO was insolvent at the time the Subject Transfer was made.

127.    Defendants had reasonable cause to believe that ENECO was insolvent at the time the Subject Transfer was made.

128.    By reason of the foregoing, the Subject Transfer is fraudulent as to the Plaintiff pursuant to Utah Code Ann § 25-6-6(2), made applicable by Bankruptcy Code § 544.

129.   By reason of the foregoing and pursuant to Utah Code Ann. § 25-6-8, the

Plaintiff is entitled to:

a.     A judgment avoiding the Subject Transfer.  In addition, pursuant to

Bankruptcy Code § 550, the Plaintiff is entitled to recover the value of the Subject

Transfer.

b.     An attachment or other provisional remedy against the Subject

Transfer or other property of Defendants.

c.     An injunction against the further disposition of the Subject Transfer.

d.     Any other relief the circumstances may require.


## SEVENTH CAUSE OF ACTION

(Declaration That the ENECO Board's Annulment of the
Reinstated 2005 Notes Was Valid and Proper)


130.   Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

131.   On January 2, 2007, a motion was made and passed by the ENECO

Board which annulled the September 26, 2007 decision by the prior ENECO Board to

permit the reinstatement of the interests of the Defendants in the 2005 Notes.

132.   Plaintiff is entitled to a declaratory judgment that (a) the ENECO Board's

January 2, 2007 decision to annul the reinstatement of Defendants' interests in the 2005

Notes was a valid and proper action by the ENECO Board, and (b) Maximillian is not the

Collateral Agent of the Reinstated 2005 Notes because the Patents were released as

collateral security the 2005 Notes upon their conversion by the Defendants to ENECO common stock.

## EIGHTH CAUSE OF ACTION

(Avoidance of the Reinstated 2005 Notes Pursuant to
11 U.S.C. § 548 Against the 2005 Note Holders)

133.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

134.    Pleading in the alternative, the decision by the ENECO Board on September 26, 2007 to reinstate the interests of the Defendants in the 2005 Notes was made in favor of the Defendants.

135.    As a result of the ENECO Board's decision on September 26, 2007, ENECO's property was transferred to the Defendants in the form of the Reinstated 2005 Notes and the security interests previously granted in the Patents restored.

136.    The transfers of the Reinstated 2005 Notes and the restoration of the security interests previously granted in the Patents were made within two years before the date of the filing of ENECO's chapter 11 petition for relief.

137.    ENECO received less than reasonably equivalent value in exchange for the transfer so the Reinstated 2005 Notes and the restoration of the security interests granted in the Patents were made to the 2005 Note Holders.  In addition, ENECO (i) was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with ENECO was an unreasonably small

capital; or (ii) intended to incur, or believed that ENECO would incur, debtors that would be beyond ENECO's ability to pay as such debtors matured; or (iii) made such transfers to or for the benefit of any insider.

138.    By reason of the foregoing, the transfers of the Reinstated 2005 Notes and the security interest granted in the Patents to the 2005 Note Holders are avoidable by ENECO pursuant to 11 U.S.C. § 548 and ENECO is entitled to recover the property transferred or the value of that property from the Defendants pursuant to 11 U.S.C. § 550.

139.    ENECO is entitled to recover interest from the Defendants on the fraudulent transfer of the Reinstated 2005 Notes and security interests in the Patents granted to the 2005 Note Holders from the date of the fling of this adversary proceeding.

## NINTH CAUSE OF ACTION

(Avoidance of the Reinstated 2005 Notes and Security Interests in the Patents to the
2005 Note Holders Pursuant to 11 U.S.C. § 544 and
Utah Code Ann. §§ 25-6-5(1) and 25-6-8(1) Against the 2005 Note Holders)

140.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

141.    Pleading in the alternative, the decision of the ENECO Board on September 26, 2007 to reinstate the interests of the Defendants in the 2005 Notes was made in favor of the Defendants.

142.    As a result of the ENECO Board's decision on September 26, 2007,

ENECO's property was transferred to the Defendants in the form of the Reinstated 2005

Notes and the security interests previously granted in the Patents restored.

143.    At the time the transfers of the Reinstated 2005 Notes and the security

interests in the Patents granted to the 2005 Note Holders were made, ENECO had

existing creditors.

144.    ENECO did not receive a reasonably equivalent value in exchange for the

transfers of the Reinstated 2005 Notes and the restoration of the security interests

granted in the Patents were made to the 2005 Note Holders, and (a) ENECO was

engaged or was about to engage in a business or a transaction for which its remaining

assets were unreasonably small in relation to the business, or (b) ENECO had incurred

and reasonably should have believed that it had incurred, debtors beyond its ability to

pay as they became due.

145.    By reason of the foregoing, the transfers of the Reinstated 2005 Notes

and the security interests in the Patents made to the Defendants constitute fraudulent

transfer which are avoidable pursuant to 11 U.S.C § 544 and Utah Code Ann. §§ 25-6-

5(1) and 25-6-8(1)(a), and, pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover

the property transferred or the value of that property from the Defendants.

146.    Plaintiff is entitled to recover interest from the Defendants on the

fraudulent transfers of the Reinstated 2005 Notes and security interests in the Patents

granted to the 2005 Note Holders from the date of the filing of this adversary

proceeding.

{00042902.DOC /}                    26

**WHEREFORE**, Plaintiff prays for the following relief:

A.      On Plaintiff's First Cause of Action, judgment declaring that (a) Defendants' financial contributions evidenced by the 2005 Notes are equity contributions, not debt, and (b) any purported security interest in the Collateral in favor of Defendants is null and void;

B.      In the alternative, on Plaintiff's Second Cause of Action, judgment that, pursuant to 11 U.S.C. § 544(a), the 2005 Security Agreement is void as to Plaintiff and, pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Collateral free and clear of any liens or interest claimed by Defendants;

C.      In the alternative, on Plaintiff's Third Cause of Action, judgment that, pursuant to 11 U.S.C. § 544(a), the 2005 Security Agreement is void as to Plaintiff and, pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Collateral free and clear of any liens or interest claimed by Defendants;

D.      In the alternative, on Plaintiff's Fourth Cause of Action, judgment that, pursuant to 11 U.S.C. § 547, the transfer of the security interest in the Collateral to the Defendants is avoided and, pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Collateral free and clear of any liens or interest claimed by Defendants;

E.      In the alternative, on Plaintiff's Fifth Cause of Action, judgment that, pursuant to 11 U.S.C. § 547, the transfer of the security interest in the Collateral to the Defendants is avoided and, pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Collateral free and clear of any liens or interest claimed by Defendants;

F.      In the alternative, on Plaintiff's Sixth Cause of Action, avoiding and

recovering the Subject Transfer or its value from Defendants, for an attachment or other

provisional remedy against the Subject Transfer or other property of Defendants, and an

injunction against the further disposition of the Subject Transfer;

G.      In the alternative, on Plaintiff's Seventh Cause of Action, judgment

declaring that (a) the ENECO Board's January 2, 2007 decision to annul the

reinstatement of Defendants' interests in the 2005 Notes was a valid and proper action

by the ENECO Board, and (b) Maximillian is not the Collateral Agent of the Reinstated

2005 Notes because the Patents were released as collateral security for the 2005 Notes

upon their conversion by the Defendants to ENECO common stock;

H.      In the alternative, on Plaintiff's Eighth Cause of Action, judgment declaring

that the transfers of the Reinstated 2005 Notes and the security interests in the Patents

made to the Defendants are avoided as fraudulent transfers pursuant to 11 U.S.C. §

548 and, pursuant to 550(a), Plaintiff is entitled to recover the property transferred or the

value of that property from the Defendants, plus applicable interest from the date of the

Complaint to the date of payment;

I.      In the alternative, on Plaintiff's Ninth Cause of Action, for a judgment

declaring that the transfers of the Reinstated 205 Notes and security interests in the

Patents made to the Defendants are avoided as fraudulent transfers pursuant to 11

U.S.C. § 544 and Utah Code Ann. §§ 25-6-5(1) and 25-6-8(1)(a) and, pursuant to

550(a), Plaintiff is entitled to recover the property transferred or the value of that

property from the Defendants; and

J.      For a judgment granting such other and further relief as is just and

appropriate.

Dated this 2nd day of June, 2008.

PARSONS KINGHORN HARRIS


By:     /s/ R. Kimball Mosier
        R. Kimball Mosier
        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2008, I caused to be served a true and correct copy of the foregoing Amended Complaint, as follows:

**By U.S. Mail, first-class, postage prepaid to the following:**

None

**By Electronic Service to the Following:**

Sean N. Egan
seannegan@sneganlaw.com

Jefferson W. Gross
jwgross@burbidgeandmitchell.com
dschanuel@bmgtrial.com

Cameron Hancock
chancock@rqn.com
jevans@rqn.com

George B. Hofmann
gbh@pkhlawyers.com
dh@pkhlawyers.com

Annette W. Jarvis
ajarvis@rqn.com

Lon A. Jenkins
lajenkins@joneswaldo.com
krichardson@joneswaldo.com
ecf@joneswaldo.com

Joel T. Marker
joel@mbt-law.com

Elaine A. Monson
emonson@rqn.com
docket@rqn.com

R. Kimball Mosier
trustee@pkhlawyers.com
UT05@ecfcbis.com
jc@pkhlawyers.com

Steven T. Waterman
swaterman@rqn.com
docket@rqn.com

Office of the United States Trustee
USTPRegion19.sk.ecf@usdoj.gov

/s/ R. Kimball Mosier